**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

MICHAEL JAMES BROOKER,               *

    Plaintiff/Appellant,          *

     v.                           *          Civil Action No. AW-05-2696

BANKONE, N.A.                                *

    Defendant/Appellee.   *
          *****

## <u>MEMORANDUM OPINION</u>

  This appeal arises from an Order of the United States Bankruptcy Court for the District of

Maryland (the "Bankruptcy Court") to Lift the Automatic Stay[1] to Permit the Ratification of a

Foreclosure Sale, or in the Alterative, Annulment of the Automatic Stay *nunc pro tunc*.  This Order

of the Bankruptcy Court granted BankOne, N.A's (the "Creditor's") motion to ratify the foreclosure

sale of the home occupied by Michael Brooker ("Debtor" or "Appellant") and his spouse, Tracye

Brooker, ("Co-Debtor"), located at 904 Maher Court in Fort Washington, Maryland.   Because this

Court has reviewed the entire record and has carefully examined the parties' submissions, "the

decisional process would not be significantly aided by oral argument."  BANRKR. R. 8012 (2005).

For the reasons that follow, this Court affirms.

## FACTUAL & PROCEDURAL BACKGROUND

  Debtor and Co-Debtor have encountered serious financial difficulties over the past two years.

---

[1]  Filing a petition for bankruptcy acts as an automatic stay of "any act to obtain
possession of property of the estate or of property from the estate or to exercise control over
property of the estate."  11 U.S.C. § 362(a)(3).

In that period, Debtor and Co-Debtor collectively have filed five separate chapter 13 bankruptcy petitions.[2] Debtor concedes this fact and has testified under oath that he and his spouse filed these petitions to prevent his creditors from foreclosing on his home located at 904 Maher Court in Fort Washington, Maryland (the "Property").  Thus, it comes as no surprise that Debtor filed his most recent bankruptcy petition on April 25, 2005, on the eve of a foreclosure auction for this property. After filing the April 25, 2005 petition, Debtor called Jacob Geesing, a substitute trustee ("Geesing" or the "Substitute Trustee")  who was conducting the foreclosure sale for the creditor, to inform him of the bankruptcy petition.

Although  Debtor  and  Co-Debtor's  past  bankruptcy  petitions  effectively forestalled foreclosure on the Property, the Substitute Trustee had reason to believe it could proceed with the foreclosure sale on April 26, 2005.  While conducting a title search on the property, on the morning of the scheduled foreclosure sale, he discovered the most recent deed of record, in which Debtor conveyed his entire interest in the Property to Co-Debtor on June 30, 2003.  As a result, the Substitute Trustee concluded that Co-Debtor, not Debtor, owned the property.  In addition, because the Bankruptcy Court had barred Co-Debtor from filing any bankruptcy petitions until August 30, 2005, the Substitute Trustee believed that no automatic stay under the Bankruptcy Code could

---

[2] Debtor filed a Chapter 13 petition, Case No. 03-18152 on August 19, 2003.  The Bankruptcy Court dismissed the case on October 14, 2003 for failure to complete the required filings.  Debtor filed a second Chapter 13 petition, Case No. 04-27295, on July 21, 2004.  The Bankruptcy Court again dismissed the case for failure to complete the required filings on August 11, 2004.  On September 14, 2004, Co-Debtor filed a Chapter 13 petition, Case No. 04-31149. The case was voluntarily dismissed on September 23, 2004.  A little less than five months later, Co-Debtor filed another Chapter 13 petition on February 8, 2005.  The Bankruptcy Court dismissed this case for failure to complete the required filings, and as a result, in accordance with the Bankruptcy Code and Local Rules, Co-Debtor became ineligible to file another bankruptcy petition until August 30, 2005.  Finally, on April 25, 2005, Debtor filed the chapter 13 case at issue, Case No. 05-19651.

prevent the April 26, 2005 foreclosure sale.

Parties agree that the Substitute Trustee called Debtor to apprise Debtor of his findings. Parties, however, give conflicting accounts as to the substance of the conversations that followed. At the hearing before the bankruptcy judge, the Substitute Trustee testified that he notified Debtor that Co-Debtor had sole ownership of the Property and that, in response to this information, Debtor seemed surprised.

In contrast, Debtor stated that at the time of the conversation, he possessed a Quitclaim Deed, executed on March 4, 2005, which transferred the Property from Co-Debtor to Debtor for the sum of $10.00. Debtor admits that he never recorded the March 4, 2005 deed, but claims that he told the Substitute Trustee or another man from his office, "Mr. Cooper," about the existence of this deed on the morning of the foreclosure sale. The Substitute Trustee has denied that Debtor ever mentioned this deed to him or any other person in his office and emphasized that he would not have proceeded with the foreclosure sale if he had evidence that Debtor had an interest in the Property. (Tr. 38.) Rather, the Creditor and its counsel maintain that they never saw any proof of the Quitclaim deed until well after they foreclosed on the Property.

In any event, it remains undisputed that the foreclosure sale took place on April 26, 2005, and the Property was sold to the highest bidder. The following day, the Creditor filed the instant Motion to Lift the Automatic Stay to Permit the Ratification of a Foreclosure Sale, or in the Alterative, Annulment of the Automatic Stay *nunc pro tunc*.

The Bankruptcy Court held a hearing on this motion on May 26, 2005. On August 26, 2005,

the court issued an order[3] granting the Creditor's motion. On September 16, 2005, the Bankruptcy Court issued a memorandum opinion to accompany the order, in which it made several findings of fact. First, the Bankruptcy Court determined that Debtor and Co-Debtor had not executed a Quitclaim deed on March 4, 2005, finding Debtor and Co-Debtor's testimony lacked credibility. Second, the Court found that Debtor did not mention this Quitclaim deed to the Substitute Trustee prior to April 26, 2005. The Bankruptcy Court added that even if it assumed that the deed existed on April 26, 2005, it nevertheless would grant the Creditor's motion because the facts of the case justified granting relief from the stay under Section 362(d) of the Bankruptcy Code.[4] The Bankruptcy Court also imposed an equitable servitude on the Property for the period through August 31, 2006, allowing the Creditor to conclude its foreclosure case.

Debtor filed notice of appeal of this ruling to this Court on September 6, 2005. In his brief, Appellant argues that the balance of equities do not weigh in favor of giving relief from the automatic stay.

## STANDARD OF REVIEW

A district court, sitting as an appellate court in bankruptcy, reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law are reviewed *de novo.* Fed. R. Bankr. P. 8013;[5] *see also First Nat'l Bank of Md. v. Stanley* (In re Stanley), 66 F.3d 664, 667 (4th Cir. 1995).

---

[3] The court issued an amended order on September 14, 2005, which added Co-Debtor to the caption of the case.

[4] Unless otherwise indicated, all cites refer to the Bankruptcy Code, 11 U.S.C. §§ 101 to1532 (2005).

[5] Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in relevant part:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of

In addition, the decision to lift the automatic stay under section 362 of the Bankruptcy Code "is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *see also In re Ramarkan*, 315 B.R. 361 363-64 (D. Md. 2004). Abuse of discretion analysis in this context was explained in *McDow v. Official Comm. of Equity Sec. Holders of Crimii Mae, Inc. (In re Criimi Mae, Inc.)*, 247 B.R. 146, 151 (D. Md. 1999):

> An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. However, even if a bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy court is not boundless and subject to automatic affirmance. This court is obligated to review the record and reasons offered by the [bankruptcy] court and reverse if the court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relative factors.

*Id.* (internal citations and quotations omitted).

## DISCUSSION

Section 362 "imposes an automatic stay on all proceedings merely upon the filing of a bankruptcy petition." *Gilchrist v. General Elec. Capital Corp.,* 262 F.3d 295, 303 (4th Cir.2001); *see also* 11 U.S.C. § 362(a). The Bankruptcy Court provided two alternate bases for its decision to grant relief from the automatic stay. As an initial matter, the Bankruptcy Court determined that the Property was not part of Debtor's bankruptcy estate because it found that Debtor and Co-Debtor did not execute the Quitclaim deed dated March 4, 2005 (the "Deed") prior to April 26, 2005. Debtor

---

the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013.

does not argue that he would have a legal interest in the Property in the absence of this deed and admits that he previously transferred his entire interest in the property to his spouse on June 30, 2003.  Furthermore, Debtor does not challenge the Bankruptcy Court's construction of Section 541[6] or Maryland law.  Therefore, in reviewing the Bankruptcy Court's ruling, first, this Court must decide whether the court's finding that Debtor and Co-Debtor created the Deed sometime after April 26, 2005 is clearly erroneously.

Ample evidence supports the Bankruptcy Court's assessment that Debtor's testimony was not credible.  In its opinion, the Bankruptcy Court noted that "[t]here was no logical reason given why this Quitclaim Deed would have been executed, and why it would have been left unrecorded. The Court simply does not believe the testimony of the Debtor that the Deed was left unrecorded for almost two months on purpose, on the advice of a financial institution from which the Debtor and his Spouse supposedly were seeking financing."  Debtor's explanation for why he did not record the Deed seems even more dubious in light of his testimony regarding his occupation.  When asked to estimate the value of the Property, Debtor stated: "I do real estate investment.  My employer is Lyons King Real Estate and Development.  I know how much homes are worth, I deal with real estate now." (Tr. 55).  It defies credulity that a seasoned real estate investor like Debtor would not know the import of recording a deed.  Indeed, Debtor recorded the original June 3, 2003 Quitclaim deed, which he had drafted himself. (Tr. 67.)  Viewing all this evidence, the Bankruptcy Court reasonably found Debtor's testimony was not credible.  In his appeal, Debtor virtually ignores this finding of fact, even though this finding alone would provide a sufficient legal basis to affirm the

---

[6] The Bankruptcy Code defines a debtor's bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (2005).

Bankruptcy Court's decision. Although he has provided a copy of the purported March 4, 2005 deed, Debtor has not attached any extrinsic evidence to demonstrate the document's authenticity. It appears that the notary dated the deed, but Debtor has not produced an affidavit or other testimony from the notary that confirms that the Deed was notarized on March 4, 2005. Based on the lack of corroborative evidence, this Court will not invalidate the Bankruptcy Court's finding. As a result, this Court holds that Debtor had no interest in the Property on April 26, 2005, and consequently, the Property was not subject to the Section 362 automatic stay.

Even assuming that the Debtor and Co-Debtor had executed the Deed prior to April 26, 2005, this Court would affirm the Bankruptcy Court's ruling because the circumstances in this case would support the court's decision to retroactively lift the automatic stay.

Congress has granted broad discretion to bankruptcy courts to lift or annul a Section 362(a) automatic stay to permit enforcement of rights against the property of the estate. *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994). Subsection 362(d) states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). Because the Bankruptcy Code provides no definition of what constitutes "cause" under Section 362(d), courts must determine whether to grant discretionary relief on a case-by-case basis. *Claughton*, 33 F.3d at 5 (citing *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)). A court must balance "potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345.

Although bad faith in filing for bankruptcy may be grounds for lifting an automatic stay

under Section 362, generally bad faith is not *per se* cause for granting such relief. *In re Ramkaran*, 315 B.R. 361, 365 (D. Md. 2004); *see also In re Corporation Deja Vu,* 34 B.R. 845, 846 (Bankr. D. Md. 1983) ("[c]ourts have concluded that a lack of good faith or misconduct in filing a petition under Chapter 11 entitles a secured creditor to relief from the stay of § 362."). For example, in *Corporation Deja Vu*, the bankruptcy judge lifted the automatic stay, after concluding that the debtor filed the bankruptcy petition to evade creditors, not to reorganize the debtor entity. *In re Deja Vu*, 34 B.R. at 850. The Fourth Circuit has tacitly acknowledged that bad faith may invalidate bankruptcy filings in *Carolin Corp. v. Miller,* 886 F.2d 693, 694 (4th Cir. 1989). The *Carolin* court held that a bankruptcy court may dismiss a petition under Section 1112(b) of the Code, but the court also observed:

> Just as § 1112(b) inferentially permits inquiry into a debtor's good faith in the context of an interested party's motion to dismiss, § 362(d)(1)'s "for cause" language authorizes the court to determine whether, with respect to the interests of a creditor seeking relief, a debtor has sought the protection of the automatic stay in good faith.

*Id.* at 699 (internal citations omitted).

The Fourth Circuit, however, cautioned that the presence of bad faith alone should not result in dismissal of the action, but that both bad faith and futility are necessary. *Id.* at 701. Applying this decision to the context of a motion to annul an automatic stay, it becomes clear that, at the very least, the movant must demonstrate other factors in addition to bad faith for a court to grant the requested relief. Unfortunately, courts in this Circuit have not addressed this precise issue. The Ninth Circuit Bankruptcy Appellate Panel, however, has published opinions on the various factors that merit examination when deciding to annul a stay, and this Court finds the reasoning in these cases persuasive. *See, e.g.*, *In re Williams,* 323 B.R. 691, 700 (B.A.P. 9th Cir. 2005) (holding that good

cause existed to lift the automatic stay to permit a homeowners' association to foreclose on a condominium despite the fact that Debtor had possessory and equitable interest in the property); *In re Fjeldsted,* 293 B.R. 12, 24-25 (B.A.P. 9th Cir. 2003) (upholding the retroactive lift of a Section 362 automatic stay so that a creditor could foreclose on a property after balancing case-specific factors). These additional factors may include whether the creditor was aware of the bankruptcy, "the number of . . . bankruptcy filings; the extent of any prejudice to a bona fide purchaser; . . . the debtor's compliance with the Code; how quickly the creditor moved for annulment; and how quickly the debtor moved to set aside the transfer." *In re Williams,* 323 B.R. at 700.

The evidence clearly indicates that Debtor and Co-Debtor filed the instant bankruptcy petition in bad faith. Debtor and his spouse collectively have filed five bankruptcy cases and have dismissed all but the current case within two months of the initial filings. Debtor and Co-Debtor never successfully reorganized, and Debtor admitted that he filed the previous bankruptcy petitions to avoid imminent foreclosures on the Property, not to reorganize. (Tr. 72). Even if the March 4, 2005 Quitclaim deed is authentic, it appears that Debtor and Co-Debtor used this transfer as a way to circumvent an order of the Bankruptcy Court prohibiting Co-Debtor from filing a bankruptcy petition until August 30, 2005. Based on this conduct, this Court fully agrees with the Bankruptcy Court's conclusion that "Debtor has engaged in dilatory and evasive tactics...[and] these actions have been inequitable, prejudicial to the Creditor, and abusive of the privileges afforded by bankruptcy." In short, this Court finds that Debtor's actions evince bad faith.

In addition to bad faith, this Court also finds that other factors counsel in favor of the annulment of the automatic stay. Although the Bankruptcy Order did not analyze all of the other factors, this Court will briefly review the other facts that justify affirming the Bankruptcy Court's

decision to annul the stay.  Significantly, at this point, overruling the court's order would prejudice the bona fide purchaser of the Property.  Courts are reticent to void a final sale to a bona fide purchaser except under the most extraordinary of circumstances.  *Cf. Matter of Edwards*, 962 F.2d 641 (7th Cir. 1992) (holding that even though the trustee did not give a lien holder notice of the sale of the property against which it had a lien, the bona fide purchaser had good title to the property). That the creditor promptly filed this action just one day after the foreclosure auction took place also militates in favor of annulling the stay.

Debtor has argued that this Court should set aside the Bankruptcy Court's ruling because this case does not directly parallel the cases cited in the Bankruptcy Court's decision.  In particular, Debtor contends that the factual differences in *Williams*, *In re National Environmental Waste Corp*, 129 F.3d 1052 (9th Cir. 1997), and *In re Allen*, 300 B.R 105 (Bankr. D.D.C. 2003) make these cases readily distinguishable from the case at bar.  This Court agrees that none of these cases are directly on point.  Yet, in the law, one rarely finds two cases with identical facts.  This Court, however, is satisfied that the specific facts of *this* case warrant relief from the automatic stay based on bankruptcy caselaw.  Considering the presence of the other factor described above, along with the evidence of Debtor's bad faith, this Court cannot agree with Debtor that the Bankruptcy Court relied on clearly erroneous facts or used an erroneous legal standard.

In sum, this Court affirms the Bankruptcy Court's finding that Debtor's testimony was not credible and finds that even if the Bankruptcy Court had credited Debtor's testimony, the balance of equities tip in favor of lifting the stay.

## <u>CONCLUSION</u>

Therefore, for the foregoing reasons, the Judgment of the bankruptcy court is AFFIRMED.

An Order consistent with this Opinion will follow.

<u>January 13, 2006</u>                                       <u>            /s/            </u>
Date                                                                Alexander Williams, Jr.
                                                                    United States District Judge